**FILED**

JUL 17 2019

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

UNITED STATES OF AMERICA )
)                         No. **19 CR    582**
v.                          )
)                         Violations: Title 18, United States
DAVID IZSAK               )                         Code, Sections 1344 and 1028A

**JUDGE NORGLE**
**MAGISTRATE JUDGE HARJANI**

**COUNT ONE**

The SPECIAL JANUARY 2019 GRAND JURY charges:

1.      At times material to this Indictment:

a.      Defendant DAVID IZSAK was a licensed real estate salesperson, then a licensed real estate broker, in the State of Illinois.

b.      Premier Assets, Inc. (Premier Assets) was a business incorporated in Illinois in or around September 2012, with IZSAK as president and sole officer.

c.      Premier Properties Enterprises, Inc. (PPE) was a business incorporated in Illinois in or around February 2017, with IZSAK as the sole officer. PPE was involuntarily dissolved in or around June 2017.

d.      Yale Schiff ("Schiff") was a business associate of IZSAK.

e.      The David Izsak Fake Identity was an identity with the name David Izsak, a social security number and a date of birth that did not belong to IZSAK, an invalid Illinois driver's license bearing an invalid number and IZSAK's likeness, and fictitious employment and income information.

f. The Jeff Kaplan Fake Identity was an identity with the name Jeff Kaplan, a social security number that belonged to a real person not named Jeff Kaplan, a date of birth not known to be associated with any person named Jeff Kaplan, and fictitious employment and income information.

g. The Sam Rosen Fake Identity was an identity with the name Sam Rosen, a social security number that belonged to a real person not named Sam Rosen, a date of birth not known to be associated with any person named Sam Rosen, and fictitious employment and income information.

h. L.I. was a relative of IZSAK. At times, IZSAK had a written power of attorney for L.I.'s health care. The L.I. Stolen Identity was an identity with the name and social security number of L.I., a false address, and false employment and income information.

i. J.G. was a business associate of IZSAK who died in or around January 2018. The J.G. Stolen Identity was an identity used after the death of J.G., with the name and social security number of J.G.

j. Ally Bank, Bank of America (BOA), Barclaycard U.S. (Barclay), BMO Harris Bank (BMO Harris), Fifth Third Bank (Fifth Third), ING Bank, fsb, which was acquired by Capital One National Association in or around 2012 (ING Bank), JP Morgan Chase Bank (Chase Bank), RBS Citizens National Association (RBS), TD Bank, United Bank, and Washington Mutual Bank, which was acquired by Chase Bank in or around 2008 (WAMU), were financial institutions insured by

2

the Federal Deposit Insurance Corporation. CGI Finance was a North American subsidiary and branch of Societe Generale, a foreign bank.

k.      Pentagon Federal Credit Union (PenFed) was a financial institution insured by the National Credit Union Administration.

l.      Financial institutions, including those identified in the previous two subparagraphs, required loan and credit applicants to provide truthful information, including the applicant's identity, financial condition, employment, income, and liabilities, and encumbrances on collateral, all of which was material to the financial institutions' approval, terms, and funding of loans and extensions of credit.

m.      Mortgage lenders often sold or assigned loans to other lenders and institutions (successors). Lenders disclosed that the loans could be sold or assigned and the likelihood that the loans would be sold or assigned. The information provided in loan applications and supporting documents, including the borrower's identity, financial condition, employment, income, and liabilities, and encumbrances on collateral, was material to the successors' decision to purchase or service the loans.

2.      Beginning in or around 2005 and continuing to in or around 2018, in the Northern District of Illinois, Eastern Division, and elsewhere,

DAVID IZSAK,

defendant herein, knowingly participated in a scheme to defraud a financial institution and to obtain money, funds, credits, assets and other property owned by

3

and under the custody and control of a financial institution by means of materially false and fraudulent pretenses, representations, and promises, and concealment of material facts, which scheme is further described in the following paragraphs.

3.     It was part of the scheme that IZSAK fraudulently caused financial institutions to issue mortgage, vehicle, and boat loans, lines of credit, and credit card accounts in a total amount in excess of $4,000,000, by making materially false representations to, and by concealing material facts from, financial institutions regarding borrowers' identities, financial condition, and employment, and encumbrances on collateral.

4.     It was further part of the scheme that IZSAK filed and caused to be filed false and fraudulent releases of mortgages and liens on real property and vehicles held by financial institutions as collateral for loans, thereby making it appear that the title to the collateral was free and clear and allowing IZSAK to fraudulently obtain additional loan proceeds or to sell the collateral and retain the proceeds without payment to prior lienholders.

5.     It was further part of the scheme that IZSAK fraudulently used the David Izsak Fake Identity to obtain credit from financial institutions.

6.     It was further part of the scheme that IZSAK fraudulently used the identities of other real individuals, namely L.I. and J.G., without authorization from those individuals, to obtain loans and credit from financial institutions.

4

### Fraudulently Obtained Mortgage Loans

7.      It was further part of the scheme that IZSAK fraudulently obtained mortgage loans from financial institutions through false statements in loan application materials and false releases of liens on the collateral.

### 2046 W. Race Street, Chicago

8.      It was further part of the scheme that, in or around December 2005, IZSAK obtained from BMO Harris a home equity line of credit (HELOC) for approximately $662,500, secured by a property he owned located at 2046 W. Race Street, Chicago, Illinois (Race Street Property).

9.      It was further part of the scheme that, in or around September 2006, IZSAK filed or caused to be filed with the Cook County Recorder of Deeds a release that falsely stated that the BMO Harris HELOC was paid in full and that the lien was thereby released when, as IZSAK knew, the loan was not paid in full and the lien had not been released.

10.      In order to conceal the scheme, IZSAK continued to pay on the BMO Harris HELOC after he caused the filing of the false lien release.

11.      It was further part of the scheme that after IZSAK caused the filing of the false release of the lien held by BMO Harris on the Race Street Property, he continued to obtain and attempt to obtain advances on the BMO Harris HELOC.

12.      It was further part of the scheme that, between approximately 2006 and 2008, IZSAK fraudulently obtained other loans from multiple financial institutions, including ING Bank, BOA, and WAMU, all secured by the Race Street Property, using

false information, including false statements that there were no prior liens on the Race Street Property or that loans secured by the Race Street Property were instead secured by other properties.

13.     It was further part of the scheme that, between approximately 2007 and 2009, IZSAK filed or caused to be filed with the Cook County Recorder of Deeds releases falsely stating that the ING Bank, BOA, and WAMU loans had been paid in full and those financial institutions' liens on the Race Street Property were thereby released when, as IZSAK knew, the loans were not paid in full and the liens had not been released.  In order to conceal the scheme, IZSAK continued to make payments on these loans after he caused the filing of the false lien releases.

14.     It was further part of the scheme that, in or around December 2009, IZSAK fraudulently obtained, and subsequently received advances on, a HELOC from Fifth Third in the amount of approximately $500,000 using the Race Street Property as collateral and by submitting false loan application information, including false employment and income information, a false Form W2, false tax returns, false statements that the Race Street Property had no other liens and its title was free and clear, and false statements that loans secured by the Race Street Property were instead secured by other properties.

15.     It was further part of the scheme that, in or around June 2010, IZSAK filed or caused to be filed with the Cook County Recorder of Deeds a release that falsely stated that the Fifth Third HELOC was paid in full thereby releasing the bank's lien when, as IZSAK knew, the loan was not paid in full and the lien had not been released.

6

16.     In order to conceal the scheme, in or around June 2010, IZSAK attempted to make a payment on the Fifth Third HELOC after he caused the filing of the false release.

17.     It was further part of the scheme that, in or around March 2015, IZSAK provided false sworn testimony in a proceeding before the Illinois Department of Financial and Professional Regulation, including that he had not previously caused any releases to be filed with the Cook County Recorder of Deeds falsely discharging any mortgage on the Race Street Property.

<u>2158 Grand Avenue, Unit 208, Chicago</u>

18.     It was further part of the scheme that, in or around November 2005, IZSAK fraudulently obtained, and until 2009 received advances on, a HELOC from Chase Bank in the amount of approximately $292,500, using a property he owned located at 2158 W. Grand Avenue, Unit 208, Chicago, Illinois (Grand Avenue Property) as collateral and by submitting false loan application information, including false employment and income information.

19.     It was further part of the scheme that, in or around November 2010, IZSAK filed or caused to be filed with the Cook County Recorder of Deeds a release that falsely stated that the Chase Bank HELOC was paid in full and that the lien was thereby released when, as IZSAK knew, the loan was not paid in full and the lien had not been released.

20.     In order to conceal the scheme, in or around December 2010 and January 2011, IZSAK made and attempted to make payments on the Chase Bank

HELOC, including an attempt to pay with fake checks, after he caused the filing of the false release.

21. It was further part of the scheme that, in or around December 2010, in an attempt to obtain additional funds from the Chase Bank HELOC, IZSAK represented to Chase Bank that he had made a payment, while concealing from the bank that his purported payment used fake checks and that he had filed a false release of the bank's lien.

22. It was further part of the scheme that, in or around April 2012, IZSAK sold the Grand Avenue Property to another individual for approximately $230,000 and received approximately $211,660 in sales proceeds, which he kept for his own benefit, without making any payment from those proceeds toward the outstanding Chase Bank HELOC.

### Fraudulently Obtained Vehicle Loans

23. It was further part of the scheme that IZSAK fraudulently obtained vehicle loans from financial institutions through false statements, including the use of false and stolen names and personal identifying information, in loan application materials, and through fictitious releases falsely asserting that such loans had been paid in full.

24. It was further part of the scheme that, in or around October 2010, IZSAK obtained from BOA a loan of approximately $34,998 for the purchase of a 2011 Grand Cherokee, secured by a lien on the vehicle.

25. It was further part of the scheme that, in or around May 2012, IZSAK submitted or caused to be submitted to the Illinois Secretary of State a letter falsely purporting to be from BOA and falsely stating that the BOA loan was paid in full and that the lien on the 2011 Grand Cherokee was thereby released when, as IZSAK knew, there was an outstanding balance on the BOA loan and the lien had not been released.

26. It was further part of the scheme that, in or around May 2014, IZSAK, using the David Izsak Fake Identity, obtained from RBS a loan in the amount of approximately $31,690 to purchase a 2014 Jeep Wrangler, secured by a lien on the vehicle.

27. It was further part of the scheme that, in or around March 2015, IZSAK, using the L.I. Stolen Identity, obtained from PenFed a loan in the amount of approximately $46,300 for L.I. to purchase the 2014 Jeep Wrangler from IZSAK, secured by a lien on the vehicle in favor of PenFed.

28. It was further part of the scheme that, in or around March 2015, in addition to using the L.I. Stolen Identity, IZSAK falsely represented to PenFed that Premier Assets owned the 2014 Jeep Wrangler and provided PenFed with a fake Illinois Certificate of Title falsely reflecting Premier Assets as the owner of the 2014 Jeep Wrangler and showing no lienholder when, as IZSAK knew, Premier Assets was not the owner of the 2014 Jeep Wrangler and RBS had an outstanding loan secured by a lien on the vehicle.

29. It was further part of the scheme that, in or around March 2015, IZSAK received approximately $46,300 in proceeds from the purported sale of the 2014 Jeep

Wrangler to L.I., which he kept for his own benefit, without making any payment from those proceeds to RBS.

30. It was further part of the scheme that, in or around August 2015, IZSAK caused the Illinois Secretary of State to transfer title of the 2014 Jeep Wrangler from IZSAK to L.I., while concealing RBS as a lienholder.

31. It was further part of the scheme that, in or around September 2016, IZSAK, using the David Izsak Fake Identity, obtained from Ally Bank a loan of approximately $44,300 to purchase a 2016 Jeep Wrangler, secured by a lien on the vehicle.

32. It was further part of the scheme that, in or around October 2017, IZSAK submitted or caused to be submitted to the Wisconsin Secretary of State an application for a new title and a fake Illinois Certificate of Title, both falsely reflecting PPE as the owner of the 2016 Jeep Wrangler with no lienholder when, as IZSAK knew, PPE was not the owner of the 2016 Jeep Wrangler and Ally Bank had an outstanding loan secured by a lien on the vehicle.

### Fraudulently Obtained Boat Loan

33. It was further part of the scheme that, in or around April 2011, IZSAK obtained a loan from CGI Finance (succeeded in interest by United Bank in or around 2016) for approximately $360,000 to fund the purchase of a 2004 Carver 570 Voyager yacht, known as "Flying Lady," for approximately $450,000, secured by the yacht, by submitting false loan application information, including false income and employment

information, false tax returns, false bank statements, and false representations regarding outstanding loans secured by the Race Street Property.

### Fraudulently Obtained Credit Card Accounts and Lines of Credit

34. It was further part of the scheme that IZSAK fraudulently obtained from financial institutions credit card accounts and lines of credit using false identities, including the David Izsak Fake Identity, the L.I. Stolen Identity, and the J.G. Stolen Identity, and other false information, which he used to pay expenses for himself and others, and on which he then left unpaid balances.

35. It was further part of the scheme that, in or around September 2012, IZSAK, using the David Izsak Fake Identity, obtained from Barclays a MasterCard Black credit card account ending in number 3730, with subsequent account numbers 6992 and 6410, which IZSAK used for his and Schiff's benefit.

36. It was further part of the scheme that, in or around June 2013, IZSAK, using the David Izsak Fake Identity, obtained from PenFed a Visa credit card account, which IZSAK used for his benefit.

37. It was further part of the scheme that, in or around September 2016, IZSAK, in order to conceal his true use of the PenFed Visa account, incurred purported charges from Synergy Corp., a company owned by Schiff, with the payments to Synergy deposited into a Citibank account held and controlled by Schiff in the name of the Jeff Kaplan Fake Identity, the proceeds of which Schiff used to purchase a cashier's check payable to IZSAK which was deposited into IZSAK's bank account.

38.    It was further part of the scheme that, in or around October 2014, IZSAK, using the L.I. Stolen Identity, obtained from Chase Bank a MileagePlus credit card account, which IZSAK used for his benefit, including payment of approximately $15,000 on the PenFed Visa credit card account IZSAK obtained in the David Izsak Fake Identity.  Some payments made on the MileagePlus credit card account were made from L.I.'s bank account funded primarily by her monthly Social Security benefits.

39.    It was further part of the scheme that, in or around December 2014, IZSAK, using the L.I. Stolen Identity, obtained and received advances on a $25,000 line of credit from PenFed.  Most of the funds advanced from the PenFed line of credit were transferred to a checking account controlled by Schiff in the name of the Sam Rosen Fake Identity, with payments on the line of credit made from L.I.'s bank account funded primarily by her Social Security benefits, and from checking accounts in the names of the Sam Rosen Fake Identity and the Jeff Kaplan Fake Identity, respectively.

40.    It was further part of the scheme that, in or around February 2018, IZSAK, using the J.G. Stolen Identity, obtained or caused to be obtained from TD Bank a Nordstrom credit card account, which IZSAK and Schiff used for their own benefit.

41.    It was further part of the scheme that IZSAK misrepresented, concealed, and hid, and caused to be misrepresented, concealed, and hidden, the existence, purposes, and acts done in furtherance of the scheme.

42.     On or about December 31, 2009, in the Northern District of Illinois, Eastern Division, and elsewhere,

DAVID IZSAK,

defendant herein, knowingly executed and attempted to execute the above-described scheme by causing Fifth Third to issue proceeds to IZSAK in the amount of approximately $100,000 from the HELOC secured by the Race Street Property;

In violation of Title 18, United States Code, Section 1344.

## COUNT TWO

The SPECIAL JANUARY 2019 GRAND JURY further charges:

1.    The allegations of paragraphs 1 through 41 of Count One are incorporated here.

2.    On or about January 13, 2010, in the Northern District of Illinois, Eastern Division, and elsewhere,

### DAVID IZSAK,

defendant herein, knowingly executed and attempted to execute the above-described scheme by causing Fifth Third to issue proceeds to IZSAK in the amount of approximately $300,000 from the HELOC secured by the Race Street Property;

In violation of Title 18, United States Code, Section 1344.

## COUNT THREE

The SPECIAL JANUARY 2019 GRAND JURY further charges:

1.     The allegations of paragraphs 1 through 41 of Count One are incorporated here.

2.     On or about June 23, 2010, in the Northern District of Illinois, Eastern Division, and elsewhere,

### DAVID IZSAK,

defendant herein, knowingly executed and attempted to execute the above-described scheme by filing or causing to be filed with the Cook County Recorder of Deeds a false release of the lien held by Fifth Third on the Race Street Property to secure the HELOC proceeds issued to IZSAK;

In violation of Title 18, United States Code, Section 1344.

## COUNT FOUR

The SPECIAL JANUARY 2019 GRAND JURY further charges:

1.     The allegations of paragraphs 1 through 41 of Count One are incorporated here.

2.     On or about November 22, 2010, in the Northern District of Illinois, Eastern Division, and elsewhere,

### DAVID IZSAK,

defendant herein, knowingly executed and attempted to execute the above-described scheme by filing or causing to be filed with the Cook County Recorder of Deeds a false release of the lien held by Chase Bank on the Grand Avenue Property to secure the HELOC proceeds issued to IZSAK;

In violation of Title 18, United States Code, Section 1344.

16

## COUNT FIVE

The SPECIAL JANUARY 2019 GRAND JURY further charges:

1.      The allegations of paragraphs 1 through 41 of Count One are incorporated here.

2.      On or about December 31, 2010, in the Northern District of Illinois, Eastern Division, and elsewhere,

### DAVID IZSAK,

defendant herein, knowingly executed and attempted to execute the above-described scheme by causing BMO Harris to issue proceeds to IZSAK in the amount of approximately $1,000 from the HELOC secured by the Race Street Property;

In violation of Title 18, United States Code, Section 1344.

## COUNT SIX

The SPECIAL JANUARY 2019 GRAND JURY further charges:

1.     The allegations of paragraphs 1 through 41 of Count One are incorporated here.

2.     On or about April 15, 2011, in the Northern District of Illinois, Eastern Division, and elsewhere,

### DAVID IZSAK,

defendant herein, knowingly executed and attempted to execute the above-described scheme by causing CGI Finance to issue loan proceeds to IZSAK in the amount of approximately $360,000 for the purchase of a yacht known as Flying Lady;

In violation of Title 18, United States Code, Section 1344.

## COUNT SEVEN

The SPECIAL JANUARY 2019 GRAND JURY further charges:

1.     The allegations of paragraphs 1 through 41 of Count One are incorporated here.

2.     On or about September 23, 2012, in the Northern District of Illinois, Eastern Division, and elsewhere,

### DAVID IZSAK,

defendant herein, knowingly executed and attempted to execute the above-described scheme by causing Barclays to open a MasterCard Black credit card account ending in number 3730, with subsequent account numbers 6992 and 6410, in the name of the David Izsak Fake Identity;

In violation of Title 18, United States Code, Section 1344.

19

## COUNT EIGHT

The SPECIAL JANUARY 2019 GRAND JURY further charges:

1.      The allegations of paragraphs 1 through 41 of Count One are incorporated here.

2.      On or about June 3, 2013, in the Northern District of Illinois, Eastern Division, and elsewhere,

DAVID IZSAK,

defendant herein, knowingly executed and attempted to execute the above-described scheme by causing PenFed to open a Visa credit card account in the name of the David Izsak Fake Identity;

In violation of Title 18, United States Code, Section 1344.

## COUNT NINE

The SPECIAL JANUARY 2019 GRAND JURY further charges:

1.      The allegations of paragraphs 1 through 41 of Count One are incorporated here.

2.      On or about May 15, 2014, in the Northern District of Illinois, Eastern Division, and elsewhere,

### DAVID IZSAK,

defendant herein, knowingly executed and attempted to execute the above-described scheme by causing RBS to issue loan proceeds to the David Izsak Fake Identity in the amount of approximately $31,690 for the purchase of a 2014 Jeep Wrangler;

In violation of Title 18, United States Code, Section 1344.

## COUNT TEN

The SPECIAL JANUARY 2019 GRAND JURY further charges:

1.      The allegations of paragraphs 1 through 41 of Count One are incorporated here.

2.      On or about March 23, 2015, in the Northern District of Illinois, Eastern Division, and elsewhere,

### DAVID IZSAK,

defendant herein, knowingly executed and attempted to execute the above-described scheme by causing PenFed to issue loan proceeds purportedly to L.I. in the amount of approximately $46,300 for the purchase of a 2014 Jeep Wrangler;

In violation of Title 18, United States Code, Section 1344.

## COUNT ELEVEN

The SPECIAL JANUARY 2019 GRAND JURY further charges:

1.     The allegations of paragraphs 1 through 41 of Count One are incorporated here.

2.     On or about February 14, 2018, in the Northern District of Illinois, Eastern Division, and elsewhere,

### DAVID IZSAK,

defendant herein, knowingly executed and attempted to execute the above-described scheme by causing TD Bank to open a Nordstrom credit card account in the name of the J.G. Stolen Identity;

In violation of Title 18, United States Code, Section 1344.

23

## COUNT TWELVE

The SPECIAL JANUARY 2019 GRAND JURY further charges:

On or about February 14, 2018, in the Northern District of Illinois, Eastern Division, and elsewhere,

### DAVID IZSAK,

defendant herein, during and in relation to any felony, namely bank fraud as charged in Count Eleven, did knowingly possess and use, without lawful authority, a means of identification of another person, namely the social security number and date of birth of J.G.;

In violation of Title 18, United States Code, Section 1028A.

24

## FORFEITURE ALLEGATION

The SPECIAL JANUARY 2019 GRAND JURY alleges:

1.      Upon conviction of an offense in violation of Title 18, United States Code, Section 1344, as set forth in this Indictment, defendant DAVID ISZAK shall forfeit to the United States of America any property which constitutes and is derived from proceeds obtained directly and indirectly as a result of the offense, as provided in Title 18, United States Code, Section 982(a)(2)(A).

2.      The property to be forfeited includes, but is not limited to:

   a.      a personal money judgment in the amount of approximately $4,000,000; and,

   b.      the following specific property:

      (i)      funds in the amount of $100,961.40 seized on or about February 21, 2017, previously held in Citibank account number XXXXX3647, in the name of Premier Assets; and

      (ii)      a 2004 Carver 570 Voyager 57' watercraft, bearing Hull ID CDRNA172B404 and the name "Flying Lady," and all equipment, inventory and effects thereon contained.

3.      If any of the property described above, as a result of any act or omission by defendant: cannot be located upon the exercise of due diligence; has been transferred or sold to, or deposited with, a third party; has been placed beyond the jurisdiction of the Court; has been substantially diminished in value; or has been commingled with other property which cannot be divided without difficulty, the United States of America shall be entitled to forfeiture of substitute property, as provided in Title 21, United States Code, Section 853(p).

A TRUE BILL:

_____

FOREPERSON

_____

UNITED STATES ATTORNEY